IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 3, 2017

**STATE OF TENNESSEE v. KENNETH BERNARD SCOTT**

**Appeal from the Circuit Court for Henderson County**
**No. 15065-2      Donald H. Allen, Judge**

_____

**No. W2016-02488-CCA-R3-CD**

_____

The Defendant, Kenneth Bernard Scott, was convicted by a Henderson County jury of the sale and delivery of less than .5 grams of cocaine, a Class C felony, and two counts of the sale and delivery of .5 grams or more of cocaine, a Class B felony, and was sentenced by the trial court as a Range II, multiple offender to an effective term of sixteen years in the Department of Correction. The Defendant raises two issues on appeal: (1) whether the trial court erred by allowing laboratory reports into evidence without the testimony of the technician who conducted the testing and prepared the reports; and (2) whether the trial court imposed an excessive sentence. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Samuel W. Hinson, Lexington, Tennessee, for the appellant, Kenneth Bernard Scott.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of a series of controlled drug purchases that were made from the Defendant by a confidential informant who was working with the Henderson County Sheriff's Department, which resulted in the Henderson County Grand Jury's return of a

six-count indictment against the Defendant. Counts one and two charged the Defendant with the August 11, 2014 sale and delivery of .5 grams or more of cocaine, counts three and four with the August 13, 2014 sale and delivery of .5 grams or more of cocaine, and counts five and six with the August 14, 2014 sale and delivery of .5 grams or more of cocaine. At the jury trial, the State presented four witnesses: the two Henderson County Sheriff's Department investigators who arranged and monitored the controlled drug purchases, the confidential informant who made the purchases, and a Tennessee Bureau of Investigation ("TBI") scientist who prepared one of the laboratory reports and reviewed the two others. The Defendant elected not to testify and did not present any witnesses. Following deliberations, the jury convicted the Defendant of the indicted offenses in counts three through six and of the lesser offenses of the sale and delivery of less than .5 grams of cocaine in counts one and two. After merging the sale and delivery counts that occurred on the same dates, the trial court sentenced the Defendant as a Range II, multiple offender to concurrent terms of eight years for the Class C felony and to sixteen years for each of the Class B felonies, for an effective sentence of sixteen years in the Department of Correction. Thereafter, the Defendant filed a timely notice of appeal to this court.

## ANALYSIS

### I. Admission of Laboratory Reports

The Defendant contends that the trial court erred by allowing the State to admit the TBI laboratory reports of the substances he sold to the confidential informant. Of the three laboratory reports admitted at trial, one was prepared by a State's witness, TBI Special Agent Forensic Scientist Brock Sain, and two were prepared by a former TBI special agent forensic scientist, Shalandus Garrett, who did not testify at trial. The Defendant argues that the admission of the two reports without the testimony of the TBI analyst who prepared them violated the confrontation clause and the rule against hearsay. He further argues that the reports constituted expert opinion testimony for which the State failed to lay a proper foundation, in violation of Tennessee Rule of Evidence 702. The State argues that: the Defendant waived his Rule 702 objection by not objecting on that ground at trial or in his motion for new trial; the documents were properly admitted as business records under the hearsay exception contained in Tennessee Rule of Evidence 803(6); and the admission of the reports did not violate the Defendant's rights under the confrontation clause because, under the test set out in State v. Hutchison, 482 S.W.3d 893, 910-11 (Tenn. 2016), they carried no "indicia of solemnity" and did not serve "the primary purpose of accusing a targeted individual."

As an initial matter, we agree with the State that the Defendant has waived his Tennessee Rule of Evidence 702 objection for failure to raise it at trial or in his motion

for new trial. See Tenn. R. App. P. 36(a) (providing that the failure to make a contemporaneous objection waives the issue on appeal); Tenn. R. App. P. 3(e) (providing for waiver of issues not specifically stated in a motion for new trial). At trial, defense counsel objected to the admission of the records on two grounds only: that they constituted inadmissible hearsay that did not legitimately fall under the business records exception because they "were prepared specifically for evidence at trial"; and that the two reports prepared by the TBI analyst who was not present at trial violated the Defendant's right to confront the witnesses against him. In fact, defense counsel specifically informed the trial court that he had no questions regarding Agent Sain's qualifications and had no objections to his being accepted as an expert witness. Accordingly, the Defendant has waived his objection to the evidence on this ground.

We further agree with the State that the trial court did not err in ruling that the records fell within the business records exception to the rule against hearsay. Tennessee Rule of Evidence 803(6) provides in pertinent part:

> Records of Regularly Conducted Activity.--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) . . . .

Agent Sain testified at great length about the TBI's rigid laboratory processes and procedures regarding the analysis of controlled substances submitted by law enforcement. He stated that the laboratory reports were maintained by the TBI crime laboratory as part of its regular business practices and remained in the custody of the crime laboratory. He further testified that he had, following routine TBI procedure, reviewed Agent Garrett's reports to verify her findings. He explained the practice:

> [I]n the Crime Lab, before a report is released, it has to be reviewed any [sic] other scientist who is capable of looking at those results to determine if that person followed the proper policies and procedures, did the same testing that we're required to do. So, before any of my reports are released, someone who is trained in drug identification must review that report so that we know that the policies, procedures, testing complies with our procedures at the TBI.

- 3 -

This court has previously concluded that TBI laboratory reports, prepared during the regular course of the TBI laboratory's business, are properly admitted under the business records exception to the rule against hearsay. See State v. Bashan Murchison, No. E2014-01250-CCA-R3-CD, 2016 WL 659844, at *8 (Tenn. Crim. App. Feb. 12, 2016), perm. app. denied (Tenn. Aug. 18, 2016) (citing State v. Vernon Dewayne Waller, No. M2001-02414-CCA-R3-CD, 2002 WL 1949696, at *5 (Tenn. Crim. App. Aug. 23, 2002); State v. Bobby Wells, Jr., No. E2000-01496-CCA-R3-CD, 2001 WL 725305, at *5 (Tenn. Crim. App. June 28, 2001)). In this case, we, likewise, conclude that the trial court properly admitted the laboratory reports as business records of the TBI.

Finally, we also agree with the State that the trial court did not err in overruling the Defendant's objection based on the alleged violation of his rights to confront the witnesses against him. The Defendant cites Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), in support of his argument that the "TBI reports were the type of testimonial statements covered by the Confrontation Clause, . . . because they were made for the exclusive use at trial and were offered as evidence" against him. The Defendant asserts that his case is "almost directly on point with the facts of the Melendez-Diaz case," in which the United States Supreme Court concluded that the admission of certificates signed by state laboratory analysts identifying evidence as cocaine, without the testimony of the analysts at trial, violated a defendant's Sixth Amendment right to confront the witnesses against him because the certificates were quite plainly affidavits, which fell within the core class of testimonial statements covered by the Confrontation Clause. Id. at 311.

However, as the State points out, the Defendant ignores subsequent cases that have refined the Melendez-Diaz ruling. In Williams v. Illinois, 567 U.S. 50 (2012), the Supreme Court addressed whether a rape defendant's confrontation rights were violated in a case in which a male DNA profile obtained from the victim's vaginal swabs had been prepared by an outside laboratory. The report generated by the outside laboratory was not admitted at trial, and no one from that laboratory testified, but a police DNA analyst, relying on the outside laboratory report, testified that the defendant's DNA profile, which was in the police department's database, matched the DNA profile obtained by the outside laboratory. Id. at 59-63.

Williams resulted in a plurality opinion, a separate concurrence by Justice Thomas, and a dissent. The Williams plurality used a primary purpose test, "focus[ing] on whether the out-of-court statement had 'the primary purpose of accusing a targeted individual.'" Hutchison, 482 S.W.3d at 908 (quoting Williams, 567 U.S. at 84). Justice Thomas, in his separate Williams concurrence, focused instead on whether the statement possessed "'indicia of solemnity.'" Id. at 909 (quoting Williams, 567 U.S. at 112). The Williams dissent, rejecting both the plurality's targeted-accusation test and Justice

Thomas' emphasis on "indicia of reliability," focused on whether the out-of-court statement "was done to establish a fact in a criminal proceeding[.]" Id. at 909 (citing Williams, 567 U.S. at 122).

In State v. Dotson, 450 S.W.3d 1, 68 (Tenn. 2014), our supreme court recognized that "[t]he Supreme Court's fractured decision in Williams provides little guidance and is of uncertain precedential value because no rationale for the decision . . . garnered the support of a majority of the Court." The Dotson court, however, agreed with the following analysis of the Williams decision, as set forth in an opinion by the District of Columbia Court of Appeals:

> It therefore is logically coherent and faithful to Justices' expressed views to understand Williams as establishing -- at a minimum -- a sufficient, if not a necessary, criterion: a statement is testimonial at least when it passes the basic evidentiary purpose test plus either the plurality's targeted accusation requirement or Justice Thomas's formality criterion. Otherwise put, if Williams does have precedential value . . . an out-of-court statement is testimonial under that precedent if its primary purpose is evidentiary and it is either a targeted accusation or sufficiently formal in character.

Id. at 69 (quoting Young v. United States, 63 A.3d 1033, 1043-44 (D.C. 2013).

Following Dotson, our supreme court in Hutchison addressed the issue of whether the admission into evidence of an autopsy report through the testimony of a medical examiner who did not perform the autopsy violated a defendant's confrontation rights. In determining that it did not, the Hutchison court analyzed the autopsy report under the framework set out in Dotson "for applying the varying Williams standards" to determine if a statement is testimonial within the meaning of the Confrontation Clause:

> Utilizing that framework in this case, we will look first to whether the autopsy report satisfies the broad standard advocated by the four dissenting Justices in Williams, under which a statement would be deemed testimonial if its primary purpose is to prove past events potentially relevant to a criminal prosecution. Once past that threshold, we will consider whether: (1) the autopsy report has "indicia of solemnity" as set forth in Justice Thomas's separate concurrence in Williams or (2) the primary purpose of the autopsy report was to accuse a targeted individual, in accordance with Justice Alito's plurality in Williams. If the autopsy report meets that threshold standard and either of the latter two standards, it is considered testimonial within the meaning of the Confrontation Clause.

Hutchison, 482 S.W.3d at 910-11 (citations omitted).

The Hutchison court first concluded that the autopsy report met the "broad threshold standard advocated by the four dissenting Justices in Williams" because the circumstances, including the fact that the defendant was already under arrest at the time the autopsy was performed and police officers attended the autopsy, would have indicated to the medical examiner that the autopsy would likely be used in a criminal prosecution. Id. at 912.

The Hutchison court next concluded that the autopsy report did not bear "indicia of solemnity," because, although it reflected that it was authored by the non-testifying medical examiner and bore her electronic signature, it lacked "the formality and solemnity of an affidavit, deposition, or prior testimony" as the non-testifying medical examiner did not swear to or certify the facts contained in the report. Id.

Finally, the Hutchison court concluded that the autopsy report's primary purpose was not to accuse a targeted individual, but it was instead performed during the normal course of business of the medical examiner's office to determine the cause and manner of death. Id. at 913-14. Accordingly, the Hutchison court held that the autopsy report was not testimonial and that its admission did not violate the defendant's rights under the Confrontation Clause. Id. at 914.

In the case at bar, the State concedes that the laboratory reports meet the initial threshold standard, but argues that they meet neither the "indicia of solemnity" nor the "primary purpose of accusing a targeted individual" tests. We agree. The laboratory reports are each entitled "Official Forensic Chemistry Report" and contain the signature of Ms. Garrett above the notation that "[t]he above represents the interpretations and opinions of the analyst." At the bottom is the signature of "Donna C. Nelson," "Designated Representative of Director TBI," certifying and attesting that the "document is the proper record it purports to be." However, Ms. Garrett merely signed the document without swearing to, or certifying, any of the facts or findings in the report. We, therefore, conclude that the laboratory reports do not contain the "indicia of solemnity" that would implicate the Defendant's Confrontation Clause rights.

We further conclude that the reports do not serve the primary purpose of targeting an accused individual. As the State points out, the Defendant had not yet been indicted at the time the reports were generated. Moreover, although there is the notation of "Black," which was the Defendant's nickname, under the heading "SUBJECT(S)," the Defendant is not identified by his legal name or by any other identifying information. We agree with the State that the TBI analyst's role in this case was limited to analyzing the submitted substances to identify their identity and weights rather than to target any

particular individual. Accordingly, we conclude that the trial court did not err in admitting the evidence.

## II. Excessive Sentence

In a brief one-paragraph argument, the Defendant contends that "the trial court clearly abused its discretion in sentencing [the Defendant] to a 16 year sentence for crimes that were non-violent and did not indicate a desire or willingness to engage in repeated criminal activity." The Defendant asserts that he should, instead, have "been sentenced to the lowest possible sentence in his range." The Defendant does not challenge his classification as a Range II offender or make any specific arguments against the trial court's application of enhancement factors. The State responds that the Defendant cannot show that the trial court abused its broad discretion in sentencing. We agree with the State.

Under the 2005 amendments to the Sentencing Act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2012).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and the sentencing decision of the trial court will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." State v. Bise, 380 S.W.3d 682, 709-10 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

The State introduced at the sentencing hearing the Defendant's presentence report, which reflected that the forty-three-year-old Defendant had a 1996 conviction in Texas for aggravated sexual assault of a child, 2011 convictions in the federal district court for the Western District of Tennessee for possession of marijuana with the intent to distribute and possession of cocaine base with the intent to distribute, and various traffic offenses. The State also introduced certified copies of the Texas and federal district court judgments. The Defendant did not testify or present any evidence. Defense counsel argued that the Defendant should be sentenced as a Range I offender and that the trial court should apply as a mitigating factor the fact that the Defendant's conduct was not violent or threatening. Defense counsel also argued that the trial court should take into consideration the fact that the Defendant "was targeted" by the confidential informant and that the drugs he sold were not "very large amounts[.]"

At the conclusion of the hearing, the trial court found that the Defendant qualified as a Range II offender based on his Texas conviction for aggravated sexual assault of a child and his federal conviction for possession of cocaine base with the intent to distribute. The court applied as an enhancement factor the fact that the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish his range and assigned that factor great weight. See Tenn. Code Ann. § 40-35-114(1). The court found no applicable mitigating factors. The court, therefore, sentenced the Defendant as a Range II offender to a mid-range sentence of eight years for each Class C felony conviction and to a mid-range sentence of sixteen years for the Class B felony conviction, with the sentences to be served concurrently, for an effective sentence of sixteen years in the Department of Correction.

The record reflects that the trial court properly considered the enhancement and mitigating factors, imposed a sentence within the applicable range for the Defendant's offenses, and made the requisite findings in support of its ruling. Accordingly, we affirm the sentences imposed by the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE